UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
ANDRÉS OSWALDO BOLLAT                    )
VASQUEZ, et al.                         )
           Plaintiffs,                  )
      v.                                )        C.A. No. 20-10566-IT
                                        )        (Leave to File Granted on July 10, 2020)
CHAD F. WOLF, Acting Secretary of       )
Homeland Security, et al.               )
                 Defendants.            )
_____)


**<u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

**INTRODUCTION**

Plaintiffs Luisa Marisol Vasquez Perez de Bollat, A.B., Evila Floridalma Colaj Olmos, and J.C., nationals of Guatemala, and Rosa Maria Martinez de Urias, a national of El Salvador ("Plaintiffs"), unlawfully entered the United States through Mexico and were apprehended very shortly thereafter. Plaintiffs were returned to Mexico pending removal proceedings pursuant to the Migrant Protection Protocols ("MPP") and the statutory authority in 8 U.S.C. § 1225(b)(2)(C). Plaintiffs challenge their return to Mexico by invoking the Immigration and Nationality Act ("INA") and implementing regulations, the Fifth Amendment's Due Process Clause and its Equal Protection component, the Administrative Procedure Act ("APA"), and what Plaintiffs refer to as the international-law "duty" of non-refoulement. Plaintiffs' Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted and lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (b)(6). Congress specifically authorized MPP in the INA, and MPP is a general statement of policy that is exempt from notice-and-comment rulemaking under the APA. Plaintiffs fail to allege any plausible violation of the Due Process Clause and the Equal Protection component of the Fifth Amendment. Further, the APA does not permit judicial review of Plaintiffs' claim based on "non-refoulement" or their claim that MPP is arbitrary and capricious. And even if such review were available, those claims fail to state a claim for relief.

**BACKGROUND[1]**

**I.  Legal Background**

Exercising its "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden," *Kleindienst v. Mandel*,

---

[1] For a larger discussion of the statutory and factual background, the government respectfully refers the Court to the background section of Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction. Dkt. 35.

409 U.S. 753, 766 (1972), Congress has, in the INA, established comprehensive procedures governing aliens' admission into and removal from the United States. At issue in this case is a procedure set forth in 8 U.S.C. § 1225, which establishes rules governing "applicants for admission"—aliens who are present in the United States without having been admitted or who arrive in the United States, either at or between ports of entry. 8 U.S.C. § 1225(a)(1). Aliens who arrive at a port of entry and those who are apprehended shortly after illegally crossing the border between the ports of entry are both "applicants for admission," 8 U.S.C. § 1225(a)(1); *DHS v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020).

For applicants for admission, "the [g]overnment must determine" at the outset whether aliens who arrive at or between ports of entry are "admissible." *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). If an immigration officer determines that an alien is inadmissible, that officer must then determine what type of immigration proceeding the alien should be placed in: (1) expedited removal proceedings, *see* 8 U.S.C. § 1225(b)(1), or (2) full removal proceedings, *see id.* §§ 1225(b)(2), 1229a. *Jennings*, 138 S. Ct. at 837. Expedited removal provides for the swift removal of aliens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" "without further hearing or review." *Id.* If an alien placed in expedited removal proceedings indicates an "intention to apply for asylum or a credible fear of persecution" or torture, that alien is entitled to a credible-fear interview (and, depending on the results of that interview, further immigration proceedings). *Id.*; *see also* 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 235.3(b)(4). A broader category of aliens, outlined in § 1225(b)(2)(A), may be placed in full removal proceedings. Section 1225(b)(2)(A) provides that if an "applicant for admission" is "not clearly and beyond a doubt entitled to be admitted," then the alien "shall be detained for a proceeding under section 1229a of this title" to determine

removability. Full removal proceedings include a hearing before an immigration judge, an opportunity for review by the Board of Immigration Appeals ("BIA"), and the option to seek judicial review in a federal court of appeals. *See id.* §§ 1229a, 1252. It is well settled that "DHS has discretion to put aliens in [full] removal proceedings even though they may also be subject to expedited removal." *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 523 (BIA 2011).

When DHS places an applicant for admission into a full removal proceeding under § 1229a, the alien is subject to mandatory detention during that proceeding, *see* 8 U.S.C. § 1225(b)(2)(A), except that certain aliens may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A). *See Jennings*, 138 S. Ct. at 837. But Congress has also provided in the alternative that, "[i]n the case of an alien described in [Section 1225(b)(2)(A)] who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States, [DHS] may return the alien to that territory pending a proceeding under section 1229a of this title." 8 U.S.C. 1225(b)(2)(C). [2]

## II. Factual Background

On December 20, 2018, the Secretary of Homeland Security announced MPP. Dkt. 36-1, 36-7.[3] Under MPP, the Secretary explained that DHS would exercise its contiguous-territory-

---

[2] Section 1225 refers to the Attorney General, but those functions have been transferred to the Secretary of Homeland Security. *See* 6 U.S.C. §§ 251, 552(d); *Thuraissigiam*, 140 S. Ct. at 1965 n.3.

[3] The Court may consider Dkts. 36-1 through 4 and 36-7, attached to Defendants' Opposition to Plaintiffs' Preliminary Injunction Motion under Fed. R. Civ. P. 12(b)(6) because the documents are either referred to in Plaintiffs' Complaint, Dkt. 1 fn. 10-12 (referring to Dkts. 36-1 (which in turn refers to the forthcoming 36-2), 36-3, 36-4, 36-7), ¶ 47 ("Defendants . . . have instead created this policy through press releases, memorandums, and shifting unilateral practices") and public documents the authenticity of which is not in dispute. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also* F.R.E. 201; *Boateng v. InterAmerican Univ.*, 210 F.3d 56, 60 (1st Cir. 2000) (a court "may look to matters of public record in deciding a Rule 12(b)(6) motion").

return authority in § 1225(b)(2)(C) to "return[ ] to Mexico" certain aliens— "arriving in or entering the United States from Mexico" "illegally or without proper documentation"—"for the duration of their immigration proceedings." Dkt. 36-7. The Secretary made "clear" that she was undertaking MPP "consistent with all domestic and international legal obligations," and emphasized that, for aliens returned to Mexico, the Mexican government has "commit[ted] to implement essential measures on their side of the border." *Id.*

Plaintiffs are five aliens who illegally crossed the U.S.-Mexico border before being apprehended and detained very soon thereafter by DHS. Dkt. 1 ¶¶ 68-69, 101, 110, 112- 113, 116; *see also* Dkt. 40 at 36:12-16. Each Plaintiff was placed in full removal proceedings under 8 U.S.C. § 1229a. *Id.*; *see also* Dkt. 45 at 4. Thereafter, DHS exercised its discretion under § 1225(b)(2)(C) to temporarily return Plaintiffs to Mexico under MPP. Dkt. 1 ¶¶ 69, 101, 113.

## STANDARDS

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint when the court lacks subject-matter jurisdiction. A plaintiff has the burden of establishing that the court has subject matter jurisdiction, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and courts "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 316 (1991).

 "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Atieh v. Riordan*, 727 F.3d 73, 76 n.4 (1st Cir. 2013) (noting that *Iqbal* may require dismissal of an APA claim "where the underlying premise of the complaint is legally flawed (rather than factually unsupported)").

**ARGUMENT**

**I.    Plaintiffs Fail to State a Claim under the INA or Its Implementing Regulations**

    A.    <u>Plaintiffs are not exempt from statutory contiguous-territory return because they crossed the border unlawfully</u>

In this Court's order granting Plaintiffs' motion for a preliminary injunction, the Court concluded that the statutory authority that Congress provided in 8 U.S.C. § 1225(b)(2)(C) to return certain aliens to a contiguous foreign territory does not extend to aliens like Plaintiffs "because they were not 'arriving' in the United States when they were apprehended but, rather, had already entered." Dkt. 45 at 14. Plaintiffs did not raise that argument in their Complaint, but in any event, the argument would not provide Plaintiffs with any basis for relief.

Assuming *arguendo* that the word "arriving" imposes a limitation on contiguous-return authority, because there is no dispute that Plaintiffs were apprehended very soon after illegally crossing the border, Plaintiffs were in the process of "arriving" when they were apprehended. As the Supreme Court recently held in *Thuraissigiam*, an alien "apprehended" inside the United States "25 yards from the border," is "apprehended in the very act of *attempting to enter this country*." 140 S. Ct. at 1964, 1970 (emphasis added). Because Plaintiffs here were apprehended shortly after illegally crossing the border, they were also apprehended in the midst of "attempting to enter this country," *id.* at 1970, and were therefore "arriving." This Court's preliminary injunction order stated that immigration law distinguishes "between noncitizens who have entered the United States, even if unlawfully, and those who remain at the threshold." Dkt. 45 at 14 (citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). But, the Supreme Court "reject[ed]" that distinction in *Thuraissigiam*. *See* 140 S. Ct. at 1982 (holding that "an alien who tries to enter the country illegally is treated as an 'applicant for admission,' § 1225(a)(1), and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry'" under *Zadvydas*).

Regardless, the word "arriving" does not independently limit the scope of the contiguous-return authority. The INA authorizes contiguous-territory return for aliens "described in subparagraph (A) [of § 1225(b)(2)], who [are] arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States." 8 U.S.C. § 1225(b)(2)(C). Aliens "described in subparagraph (A)," are "applicant[s] for admission" who are not "clearly and beyond a doubt entitled to be admitted" and who are placed in full removal proceedings. *Id.* § 1225(b)(2)(A). And "applicant[s] for admission" are aliens who are "*present in the United States who [have] not been admitted* or who arrive[] in the United States." *Id.* § 1225(a)(1) (emphasis added); Dkt. 45 at 15. The contiguous-return authority in § 1225(b)(2)(C) therefore applies to applicants for admission—that is, aliens who are unlawfully present *or* arriving in the United States—regardless of whether they arrived at a "port of arrival," and regardless of whether they are attempting to enter or have already entered the United States, so long as they are placed in full removal proceedings in accordance with § 1225(b)(2)(A), they arrived from a foreign contiguous territory, and their method of arrival is by land (as opposed to by air or by sea). Congress expressly did not exempt from contiguous-territory return aliens who are physically within the United States after illegally crossing the border; on the contrary, Congress provided in multiple provisions that aliens like Plaintiffs who cross the border between ports of entry and become present in the United States without having been admitted *are* subject to contiguous-territory return. The phrase "arriving" in § 1225(b)(2)(C) modifies "on land" and "from" a contiguous foreign territory, and simply specifies a method and place of arrival. *See Cruz v. DHS*, No. 19-cv-2727, 2019 WL 8139805, at *4 (D.D.C. Nov. 21, 2019) (rejecting argument that an alien who illegally crossed the U.S.-Mexico border was not arriving on land). "Each of the [r]eturned Plaintiffs crossed the border from Mexico into the United States," were apprehended shortly thereafter, and thus, there is no

question that these Plaintiffs fall within the scope of the statute. Dkt. 45 at 4.

B. Contiguous-territory-return applies to aliens who were also eligible to be subjected to expedited removal

Section 1225(b)(2)(C) authorizes DHS to return "an alien described in subparagraph (A) who is arriving on land (whether or not at a designated port of arrival) from a foreign territory contiguous to the United States." 8 U.S.C. § 1225(b)(2)(C). "[S]ubparagraph (A)," in turn, applies to any "applicant for admission" who "is not clearly and beyond a doubt entitled to be admitted . . . ." *id.* § 1225(b)(2)(A). The contiguous-return authority in § 1225(b)(2)(C) therefore applies to aliens who have not been admitted and arrive in the United States on land from a contiguous territory and are placed in § 1229a removal proceedings in accordance with § 1225(b)(2)(A). It is well-settled that "DHS has discretion to place aliens" in § 1229a removal proceedings under § 1225(b)(2) "even though they may also be" eligible for placement in expedited removal proceedings under § 1225(b)(1). *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. at 523. And it follows that the grounds for inadmissibility and DHS's exercise of discretion based on those grounds governs whether applicants for admission are placed in expedited removal proceedings under § 1225(b)(1) or § 1229a proceedings under § 1225(b)(2).

Plaintiffs were placed in § 1229a removal proceedings under § 1225(b)(2), not expedited removal proceedings under § 1225(b)(1). Dkt. 1 ¶¶ 68-69, 101, 110, 113, 116. As "applicant[s] for admission" who were "not clearly and beyond a doubt entitled to be admitted," Plaintiffs were placed in a removal proceeding under § 1229a. 8 U.S.C. § 1225(b)(2)(A). The plain text of § 1225(b)(2)(C) makes clear that it may be applied to aliens who have not been admitted, who, like Plaintiffs, are "described in subparagraph (A)," *i.e.*, aliens who have not been admitted and placed in full removal proceedings. *Id.* § 1225(b)(2)(C). The contiguous-return authority therefore plainly applies to Plaintiffs. *See Cruz*, 2019 WL 8139805, at *5 ("[T]he Department of Homeland

Security exercised its discretion to place Cruz in full removal proceedings. I ... doubt that Subsection (b)(1) applies to the plaintiff merely because Subsection (b)(1) could have [been] applied to him.").

Plaintiffs contend that DHS may not exercise its contiguous-return authority because—despite the fact that Plaintiffs are in § 1229a removal proceedings—they *could* have been subjected to expedited removal under § 1225(b)(1), and thus, subparagraph (A) of § 1225(b)(2) does not apply to them. In its preliminary injunction order, this Court recognized that DHS had "discretion" to place Plaintiffs "into standard § 1229a proceedings." Dkt. 45 at 19, 21. The Court nonetheless found that Plaintiffs were excepted from the application of MPP because of § 1225(b)(2)(B)(ii), which states that "[§ 1225(b)(2)(A)] shall not apply to an alien to whom paragraph [(b)](1) applies." 8 U.S.C. § 1225(b)(2)(B)(ii). The Court concluded that § 1225(b)(1) necessarily "applie[d]" to Plaintiffs, Dkt. 45 at 21-22 n.22, and thus held that they could not be returned under § 1225(b)(2)(C). But, § 1225(b)(1), the expedited removal provision, does not apply to Plaintiffs because none of them were placed in expedited removal proceedings. The aliens who are amenable to expedited and full removal proceedings overlap. Section 1225 does not set up immutable, fixed categories of aliens. Rather, Congress preserved DHS's inherent prosecutorial discretion to choose whether to apply § 1225(b)(1)'s expedited removal procedure to a particular applicant for admission, or whether, as here, instead afford him or her a full removal proceeding under § 1225(b)(2)(A). *See* Dkt. 45 at 21; 19 (noting that DHS possesses "prosecutorial discretion" to "place[]" aliens initially determined to be inadmissible due to "lack of valid documentation" in "standard removal proceedings under 8 U.S.C. § 1229a"). That is what happened here, and no alternative mechanism for Plaintiffs' placement in § 1229a removal proceedings has been identified. *Cf.* Dkt. 45 at 21. Despite Plaintiffs' unsupported contentions to the contrary, they were

not placed directly in § 1229a removal proceedings after custody determinations under § 1226. Dkt. 44 at 16-17. Custody determinations under § 1226 require arrest and detention pursuant to a warrant, which did not occur in this case. *See* 8 U.S.C. § 1226(a). Because DHS made a discretionary decision to place Plaintiffs in full removal proceedings under § 1225(b)(2), it follows that § 1225(b)(1) does not "appl[y]" to Plaintiffs. 8 U.S.C. § 1225(b)(2)(B)(ii).

As set forth above, § 1225(b)(2)(B)(ii) does not carve out from § 1225(b)(2)(C) aliens who could have been placed in expedited removal. Section 1225(b)(2)(B)(ii) instead serves a clarifying function: it mandates that aliens placed in expedited removal proceedings shall be removed "without further hearing or review," while § 1225(b)(2)(A) provides that any alien who is "not clearly and beyond a doubt entitled to be admitted" (a category that includes all aliens eligible for expedited removal) shall be placed in full removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Without § 1225(b)(2)(B)(ii), then, an alien placed in expedited removal proceedings and ordered summarily removed would, at least arguably, simultaneously be eligible for a removal proceeding under § 1229a, complete with a hearing. To eliminate that potential incongruent result, Congress included § 1225(b)(2)(B)(ii), which makes clear that an alien placed in expedited removal is not entitled to a § 1229a removal proceeding.

This Court should decline to follow the Ninth Circuit's split decision in *Innovation Law Lab v. Wolf*, 951 F.3d 1073 (9th Cir. 2020) ("*Innovation II*"), *pet. for cert. filed*, No. 19-1212 (Apr. 10, 2020). The Ninth Circuit made the same fundamental error that Plaintiffs ask this Court to make: it concluded that the contiguous return authority in § 1225(b)(2)(C) "does not apply to § (b)(1) applicants." *Innovation II*, 951 F.3d at 1085. That conclusion is wrong for all the reasons demonstrated above: There is no such thing as a "§ (b)(1) applicant." Aliens do not apply for admission under § 1225(b)(1); that subsection instead describes an expedited removal procedure

that undisputedly was not applied to Plaintiffs here. The Ninth Circuit also attempted to justify its interpretation of the statute by contending that Congress would not have wanted to return to Mexico "bona fide asylum seekers under § (b)(1)." *Innovation II*, 951 F.3d at 1087. That argument ignores the fact that there is no asylum-seeker exception to § 1225(b)(2)(C), and that eligibility for expedited removal or full removal proceedings has nothing at all to do with whether an alien seeks asylum. Moreover, under the Ninth Circuit's logic, individuals who attempt to defraud the immigration system have a stronger entitlement to remain in the United States for their removal proceedings than individuals who do not. That cannot be right.

Indeed, the Supreme Court granted the government's application to stay the Ninth Circuit's decision, with only one Justice noting that she would have denied the stay request. *Wolf v. Innovation Law Lab*, No. 19A960 (Mar. 11, 2020). The government thus established a "fair prospect that a majority of the [Supreme] Court will vote to reverse" the Ninth Circuit's decision. *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010). The Ninth Circuit also disregarded its own persuasive, prior published stay-stage decision that held, while granting a motion to stay the injunction imposed by the district court, that MPP is likely statutorily authorized by the INA because it can be applied to all aliens "processed in accordance with § 1225(b)(2)(A)" even if "subsection (b)(1) *could have been* applied" to those aliens—the precise issue here. *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 509 (9th Cir. 2019) ("*Innovation I*") (emphasis in original). That motions-panel decision was correct to grant a stay on that reasoning.

Because Plaintiffs were placed in removal proceedings under § 1229a, not expedited removal proceedings under § 1225(b)(1), Congress authorized DHS to return them temporarily to Mexico pending their removal proceedings.

C. <u>Contiguous-territory-return authority is not limited to aliens who entered the United States at ports of entry</u>

Plaintiffs' assertion that § 1225(b)(2)(C) is limited to aliens who arrive at "ports of entry," Dkt. 1 at ¶ 125, is similarly unavailing and is belied by the unambiguous statutory text. The text of § 1225(b)(2)(C) applies to an alien "who is arriving on land (*whether or not at a designated port of arrival*)." 8 U.S.C. § 1225(b)(2)(C) (emphasis added). If that were not clear enough, the definition of "applicant for admission" likewise makes no distinction between an alien who entered at a port of entry and one who did not. *See* 8 U.S.C. § 1225(a)(1). The plain language of the statute could not be clearer that contiguous-territory-return authority encompasses both those aliens who arrive at ports of entry and those, like Plaintiffs, who cross the border unlawfully between ports of entry. This Court has already held as much in adjudicating Plaintiffs' preliminary injunction motion. *See* Dkt. 45 at 16 ("Under the statutory language, if applicants are apprehended while crossing the border (whether or not at a check point), they are 'arriving' applicants under the statute" [and can be returned under §1225(b)(2)(C)]; Dkt. 40 at 12:23-24 ("[T]he statute on its face is broader than that.").

Plaintiffs nevertheless contend that 8 C.F.R. § 235.3(d) narrowed the statutory authority in 8 U.S.C. § 1225(b)(2)(C). Dkt. 1 at ¶ 125. Plaintiffs are incorrect. The regulation addresses only one part of the statutory authority in § 1225(b)(2)(C) by discussing aliens who enter at ports of entry, but the regulation is silent regarding the statutory authority in § 1225(b)(2)(C) that applies to aliens who enter between ports of entry. That regulatory silence is not a limitation because it does not in any way disavow the full scope of the statutory text of § 1225(b)(2)(C). Moreover, the regulation is phrased in permissive instead of mandatory terms: "In its discretion, the Service *may* require any alien who appears inadmissible and who arrives at a land border port-of-entry . . . to remain in that country while awaiting a removal hearing." 8 C.F.R. § 235.3(d) (emphasis added).

This discretionary language confirms that the regulation does not constrain the authority conferred by the plain text of the statute, which controls. *See Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 239 (2004) ("We first ask whether Congress has directly spoken to the precise question at issue."); *Santana v. Holder*, 731 F.3d 50, 55 (1st Cir. 2013) ("If the statute is clear in its meaning, we must give effect to the unambiguously expressed intent of Congress.").

Plaintiffs attempt to rely on regulatory history and other extra-textual sources to urge a contrary conclusion, but those arguments are misplaced: "[a]lthough history can illuminate ambiguous language in some circumstances, relying so heavily on extra-statutory sources to read silence or ambiguity into seemingly clear text runs counter to well-settled modes of interpretation." *Santana*, 731 F.3d at 58. In any event, the regulatory history confirms that the regulation is best read not as limitation, but simply as identifying the most likely situation where the agency would exercise its statutorily conferred contiguous-territory-return authority—namely, as to aliens arriving at a port of entry—without excluding the possibility of other applications. The preamble explained: "The proposed regulation implements a new provision added to [§ 1225(b)(2)] to state that an applicant for admission arriving at a land border port-of-entry and subject to a removal hearing under [§ 1229a] may be required to await the hearing in Canada or Mexico. This simply *adds to statute* and regulation a long-standing practice of the [former INS]." 62 Fed. Reg. 444-01, 445 (proposed Jan. 3, 1997) (emphasis added). Thus, the regulation was not intended and did not narrow the agency's statutory authority under § 1225(b)(2).

The Court should also reject Plaintiffs' reliance on 8 C.F.R. § 1001.1(q) to attempt to cabin DHS's statutory authority under § 1225(b)(2)(C). Plaintiffs contend that, because 8 C.F.R. § 1001.1(q) defines the term "arriving alien," in pertinent part, as an applicant for admission at a port of entry, and because § 1225(b)(2)(C) contains the word "arrive," contiguous-territory-return

authority is limited to aliens who apply for admission at a land port of entry. Dkt. 1 at ¶ 125. The statutory text does not support Plaintiffs' argument because, as noted, the text unambiguously extends contiguous-territory-return authority to aliens present in the United States without having been admitted, regardless of whether they arrived at a port of entry. The term "arriving alien" does not appear in § 1225(b)(2)(C) as it does in other parts of § 1225. *See, e.g.*, 8 U.S.C. § 1225(c)(1); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").

## II.     MPP is Not a Legislative Rule Requiring Notice and Comment

Plaintiffs' claim that MPP is unlawful under the APA because it was not promulgated through notice-and-comment rulemaking. That claim also fails to state a claim for relief that can be granted. Fed. R. Civ. P. 12(b)(6).

First, MPP is exempt from notice-and-comment rulemaking by the APA because it is a "general statement[] of policy." 5 U.S.C. § 553(b)(A); *see N.H. Hosp. Ass'n v. Azar*, 887 F.3d 62, 70 (1st Cir. 2018). MPP is not a substantive rule that was required by the APA to undergo notice-and-comment rulemaking: it does not "create[] rights, assign[] duties, or impose[] obligations, the basic tenor of which is not already outlined in the law itself." *N.H. Hosp. Ass'n*, 887 F.3d at 70; *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979); *see also Conserv. Law Found., Inc. v. Longwood Venues & Destinations, Inc.*, 422 F. Supp. 2d 435, 451-452 (D. Mass. 2019).

A general statement of policy "advise[s] the public prospectively of the manner in which the agency proposes to exercise a discretionary power." *Lincoln v. Vigil*, 508 U.S. 182, 197 (1993). And that is precisely what MPP does, as the Ninth Circuit has explained. *See Innovation I*, 924 F.3d at 509-510 ("MPP qualifies as a general statement of policy because immigration officers

designate applicants for return on a discretionary case-by-case basis."). The Ninth Circuit did not

disturb that conclusion in *Innovation II*. *See* 951 F.3d at 1082 ("We do not reach the question of

whether they have shown a likelihood of success on their claim that ... MPP should have been

adopted through notice-and-comment rulemaking."). An alien who is "amenable to the [MPP]

process" will be returned to a contiguous country only after an exercise of discretion in an

individual case: if he or she is one "who in an exercise of *discretion* the officer determines should

be subject to the MPP process." *See* Dkt. 36-2 at 1 (emphasis added). Officers are not required to

return any alien: "Officers, with appropriate supervisory review, retain discretion to process aliens

for MPP or under other procedures (e.g. expedited removal), on a case-by-case basis." *Id.* Even

for those who are "more likely than not to face persecution or torture in Mexico" and thus not

subject to return under MPP, "[o]fficers retain all existing discretion to process (or re-process) the

alien for any other available disposition, including expedited removal, [notice to appear], waivers,

or parole." *Id.* at 2.

      Plaintiffs argue that, because the non-refoulement screening procedures are mandatory,

notice-and-comment rulemaking was required. But that argument is mistaken because all of the

relevant policies simply describe how DHS will exercise its discretionary contiguous-territory-

return authority. In *Regents of the Univ. of Calif. v. DHS*, 908 F.3d 476 (9th Cir. 2018), *vacated in

part on other grounds by DHS v. Regents of the Univ. of Calif.*, No. 18-597, 2020 WL 3271746,

at *18 (June 18, 2020), the Ninth Circuit held that the rescission of the Deferred Action for

Childhood Arrivals ("DACA") program was a "general statement of policy" exempted from

notice-and-comment rulemaking. *Id.* at 512-14. The court in *Regents* noted that the rescission

made "rejection" of certain DACA applications "mandatory," but the agency retained "the

background principle of deferred action as an act of prosecutorial discretion meant to be applied

only on an individualized case-by-case basis." *Id.* at 513. Like the rescission of the DACA program, MPP—despite having "mandatory features"—is "an act of prosecutorial discretion meant to be applied only on an individualized case-by-case basis." *Regents*, 908 F.3d at 513; *see also Gill v. U.S. Dep't of Justice*, 913 F.3d 1179, 1186-87 (9th Cir. 2019) (finding the presence of "mandatory . . . language" did not render the document a "legislative rule" because of the "significant discretion retained by agencies and their analysts"). In any event, to the extent MPP's non-refoulement procedures are mandatory, it is only because they categorically *exclude* a certain class of aliens—those who are more likely than not to face persecution or torture in Mexico—from the scope of an immigration officer's return discretion. Plaintiffs lack standing to object to exemptions that were not applied to them.

Finally, Plaintiffs are incorrect to claim that the non-refoulement screening procedures in MPP "depart[] from the 'reasonable fear' regulations" found at 8 C.F.R. § 208.31. There is no "departure": Those regulations apply only to aliens ordered removed under 8 U.S.C. § 1228(b) or whose removal has been reinstated under 8 U.S.C. § 1231(a)(5). *Cf. N.H. Hosp. Ass'n*, 887 F.3d at 70. Plaintiffs offer no legal authority to support their claim that the procedures underpinning *temporary return* to a contiguous country to await § 1229a removal proceedings, at issue here, must be identical to the procedures used to remove aliens pursuant to other statutory procedures.

### III. Plaintiffs Fail to State a Claim that MPP Violates the Equal Protection Component of the Fifth Amendment Due Process Clause

Plaintiffs do not identify a *single* factual allegation that MPP is the byproduct of discriminatory animus. MPP applies to amenable "citizens and nationals of countries other than Mexico . . . arriving in the United States by land from Mexico—illegally or without proper documentation." Dkt. 36- 1 at 1. Plaintiffs have not alleged any evidence of discriminatory purpose here, and as such, Plaintiffs' equal protection claim is precluded by the Supreme Court's recent

decision in *DHS v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891 (2020).

The most Plaintiffs can muster is a series of statements the President has made in a variety of different and unrelated contexts. Dkt. 1 at ¶¶ 34-42; *see id.* at ¶ 38 ("While campaigning for President, Trump repeatedly made racist statements about people of color."). None of these statements is related to MPP, nor are they made by the relevant decision-maker, Secretary Nielsen, which means they cannot plausibly make out an equal protection claim. *See Regents*, 2020 WL 3271746, *16 ("But, even as interpreted by respondents, these statements- remote in time and made in unrelated contexts—do not qualify as 'contemporary statements' probative of the decision at issue.") And Plaintiffs do not rebut the fact that MPP can be applied to a broad range of third-country nationals who attempt to enter the United States from Mexico, regardless of that individual's race or national origin. *Id.*

In *Regents*, the Supreme Court rejected a similar challenge based on similar allegations, holding that the plaintiffs' reliance on an alleged disparate impact of the DACA rescission on Latinos from Mexico, an "unusual history" behind the rescission, and pre- and post-election statements by President Trump failed to raise a plausible inference that an "'invidious discriminatory purpose was a motivating factor' in the relevant decision." *Id.* In particular, the Supreme Court held that a claim alleging the "disparate impact of the rescission on Latinos from Mexico," in conjunction with "statements by President Trump" failed to state a "plausible equal protection claim" because "[n]one of these points, either singly or in concert" plausibly alleged discriminatory animus. *Id.* The Supreme Court held that "because Latinos make up a large share of the unauthorized alien population," that fact could not give rise to a cognizable equal protection claim as otherwise, "virtually any generally applicable immigration policy could be challenged on equal protection grounds." *Id.* The Supreme Court further held that the "cited statements" made

by President Trump were "unilluminating" because "these statements" were "remote in time and made in unrelated contexts" and thus were not "probative of the decision at issue." *Id.* The "statements" thus "fail[ed] to raise a plausible inference that the rescission was motivated by animus." *Id.* As in *Regents*, Plaintiffs' allegations, based on a series of statements by the President in a variety of unrelated contexts, also fail to raise a plausible inference that MPP was motivated by animus, and Plaintiffs fail to state a claim for relief that can be granted. Fed. R. Civ. P. 12(b)(6).

## IV.     Plaintiffs Fail to State a Claim Based On the Due Process Clause

Next, Plaintiffs contend that they are entitled to additional non-refoulement procedures under the Due Process Clause. Dkt. 1 at 34-35. Plaintiffs' claims are entirely foreclosed by the Supreme Court's decision in *Thuraissigiam*. In *Thuraissigiam*, the Supreme Court noted the general rule that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." The Court then considered the argument that that general rule does not apply to aliens who have made it "into U.S. territory before [being] caught," but the Court "reject[ed]" that view. *Thuraissigiam*, 140 S. Ct. at 1982. Instead, aliens like Plaintiffs are "on the threshold" and without a constitutional entitlement to assert due-process rights beyond what Congress has provided. *Id. Thuraissigiam* underscores that the relevant distinction for purposes of the Due Process Clause is not between aliens who are physically present in the United States and those who are not, but rather aliens who have not been admitted—even if physically present—and those who are admitted. *Id.* at 1982-83. *See also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 213 (1953) ("[H]arborage at Ellis Island is not an entry into the United States."); *Albathani v. INS*, 318 F.3d 365, 375 (1st Cir. 2003) ("As an unadmitted alien present in the United States, Albathani's due process rights are limited."); *see e.g., Zadvydas*, 533 U.S. at 682 ("Aliens

who have not yet gained initial admission to this country would present a very different question.").

Accordingly, Plaintiffs' due process claims fail. As aliens who were not admitted, illegally entered the United States and were apprehended almost immediately, Plaintiffs had "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 140 S. Ct. at 1983. Here, 8 U.S.C. § 1225(b)(2)(C) permitted the Plaintiffs to be returned to the contiguous foreign territory from which they arrived pending their removal proceedings, and none of the procedural rights to which Plaintiffs assert an entitlement are conferred by 8 U.S.C. § 1225(b)(2)(C). Thus, Plaintiffs have no right to the procedures that they claim under the Due Process Clause, despite their brief physical presence in the United States. *Thuraissigiam*, 140 S. Ct. at 1983. Accordingly, Plaintiffs' due process claim fails to state a claim for relief that can be granted. Fed. R. Civ. P. 12(b)(6).

Moreover, even if Plaintiffs were permitted to assert a substantive due process claim, they have not alleged facts that could plausibly establish a right to relief on such a claim. Fed. R. Civ. P. 12(b)(6). To prevail, Plaintiffs would be required to show that the behavior of the relevant officers "shock[s] the contemporary conscience." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 880 (1st Cir. 2010). They would also need to show that the adverse executive action was "so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Id.* at 881 (internal quotation marks and citation omitted). The factual basis for Plaintiffs' claim does not come close to satisfying that standard. Essentially, Plaintiffs simply complain that DHS exercised the very contiguous-territory-return authority that Congress provided in § 1225(b)(2)(C). But, as the First Circuit has held, "the evenhanded enforcement of the immigration laws, in and of itself, cannot conceivably be held to

violate substantive due process." *Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 22 (1st Cir. 2007); *see also Enwonwu v. Gonzales*, 438 F.3d 22, 30 (1st Cir. 2006) ("[T]here can be no *substantive* due process objection to the order removing Enwonwu." (emphasis in original)); *see also Nora v. Wolf*, No. 20-cv-0993, 2020 WL 3469670, at *13 (D.D.C. June 25, 20202) (declining to apply the state-created danger theory and rejecting substantive due process claim in MPP context).

## V. The INA Forecloses Judicial Review of Counts 2, 3 and 5 Claiming That MPP is Arbitrary and Capricious and Violates Non-Refoulement Obligations

In addition to arguing that MPP violates the INA, Plaintiffs contend that its procedures run contrary to principles of non-refoulement and that MPP is arbitrary and capricious in violation of the APA. Dkt. 1 at 29-33. But, this Court lacks subject-matter jurisdiction over those claims because 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of the Secretary's discretionary decision to return Plaintiffs to Mexico under MPP—and the procedures followed in making that decision.

Section 1252(a)(2)(B)(ii) broadly precludes judicial review of the Secretary's exercise of discretion. It says: "Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . any . . . decision or action of . . . the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).

The Secretary's return decisions under MPP meet these criteria. The decision to exercise the contiguous-territory-return authority is "specified . . . to be in the discretion of" the Secretary. *Id.* § 1252(a)(2)(B)(ii). The statute authorizing returns to contiguous territory provides that "the [Secretary] *may* return the alien to that territory pending a proceeding under section 1229a of this

title." *Id.* § 1225(b)(2)(C) (emphasis added). "By using the precatory term 'may,' rather than the directory term 'shall' Congress [in 8 U.S.C. § 1155] indicated its intent to make [the decision] discretionary." *M & K Engineering Inc. v. Johnson*, 814 F.3d 481, 485 (1st Cir. 2016) (quoting *United States v. Aponte-Guzman*, 696 F.3d 157, 160 (1st Cir. 2012)); *see also Nora*, 2020 WL 3469670, at *13 (holding that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of DHS's decision to return plaintiffs to Mexico under MPP where plaintiffs contested the results of non-refoulement interviews). Because the return authority is left to the discretion of the Secretary, the INA precludes judicial review of return decisions, including review of Plaintiffs' claim that MPP is arbitrary and capricious under the APA.[4]

Further, the INA's bar on judicial review is not limited to the return decisions themselves but also covers Plaintiffs' contention that the procedures used to arrive at return determinations are arbitrary and capricious. *See Poursina v. USCIS*, 936 F.3d 868, 875 (9th Cir. 2019) ("The essence of Poursina's complaint is that [the United States Citizenship and Immigration Services] should have exercised its discretion [differently], and his various claims simply repackage that core grievance .... [S]uch a determination is not a purely legal decision, but rather a core exercise of the discretion that the statute vests in the government."); *Cruz*, 2019 WL 8139805, at *4 ("I agree with the government that [the] claim that the MPP violates international law principles of non-refoulement falls squarely within the bar on judicial review, because with this claim Cruz is challenging the actual substance of the [Secretary's] discretionary choice to [return] Cruz to

---

[4] The district court's decision in *Innovation Law Lab v. Nielsen*, 366 F. Supp. 3d 1110, 1118 (N.D. Cal. 2019) is not to the contrary. There, the U.S. District Court for the Northern District of California held only that § 1252(a) did not preclude judicial review of the statutory question of whether § 1225(b)(2)(C) authorized the plaintiffs' placement in MPP. *Id.* ("The very point of dispute in this action is whether section 1225(b)(2)(C) applies such that DHS has such discretion, or not. That threshold question is justiciable.") Here, Defendants do not argue that the threshold statutory question is not subject to judicial review.

Mexico."); *see also Bourdon v. Dep't of Homeland Sec.*, 940 F.3d 537, 545 (11th Cir. 2019). Here, Plaintiffs challenge the procedures used to arrive at the decisions to return them to Mexico, and they present various policy objections to MPP under the guise of an APA challenge. Dkt. 1 at 29-33. Under § 1252(a)(2)(B)(ii), however, those procedures and policy objections are unreviewable. Indeed, the applicability of § 1252(a)(2)(B)(ii) is underscored by Plaintiffs' request that the Court "enjoin defendants from applying the MPP" to them, Dkt. 1 at Prayer for Relief, and "to be processed out of the MPP," Dkt. 28 at 33, because they believe that the Secretary incorrectly exercised his discretion, a challenge that is squarely foreclosed by the bar on judicial review in § 1252(a)(2)(B)(ii).[5]

Plaintiffs' claim is not justiciable for a second, independent reason: the APA does not apply to agency action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Cowels v. FBI*, 936 F.3d 62, 66 (1st Cir. 2019); *see also Make the Road New York v. Wolf*, --F.3d. ----, 2020 WL 3421904, at *12-13 (D.C. Cir. June 23, 2020) (holding that the Secretary's decision to expand expedited removal was committed to agency discretion by statute and thus not reviewable under the APA). Agency action is committed to agency discretion by law where the relevant statute is "drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Union of Concerned Scientists v. Wheeler*, 954 F.3d 11, 17, 21 (1st Cir. 2020).

As the government has demonstrated, the return of aliens like Plaintiffs to Mexico on an individualized, case-by-case basis, is entirely in the discretion of the agency, as directed by

---

[5] *Cf. Centro Presente v. DHS*, 332 F. Supp. 3d 393, 407-409 (D. Mass 2018) (finding a narrower judicial review bar in 8 U.S.C. § 1254a(b)(5)(A) did not preclude review of statutory and constitutional claims in part because the plaintiffs did not seek "a substantive declaration from the Court that they are entitled to any particular new TPS determination by the Secretary.")

Congress. The statute specifies that returns are entirely discretionary, and it does not place any constraints on how returns under § 1225(b)(2)(C) are exercised. Because of how broadly the statute is drawn, there are no statutory criteria this Court can apply to assess the dangerousness of particular regions in Mexico, as Plaintiffs urge this Court to do—nothing in the INA provides an objective measure by which to measure dangerousness or constrains the Secretary's contiguous-territory-return authority based on conditions in particular regions of a foreign country. *Cf. Union of Concerned Scientists*, 954 F.3d at 18 ("Second, as to whether FACA furnishes any meaningful standards that a reviewing court can apply, we train our attention on FACA's fair balance and inappropriate influence standards."). There is therefore "no law to apply" to Plaintiffs' claim and it is committed to agency discretion by law.

## VI.    Plaintiffs' Non-Refoulement and Arbitrary and Capricious Claims Fail on the Merits

Finally, even if judicial review were available, Plaintiffs' non-refoulement and arbitrary and capricious claims (Counts 2, 3, and 5) fail to state a claim that can be granted. Fed. R. Civ. P. 12(b)(6). First, it is well-settled that the Refugee Convention (as well as its 1967 Protocol and the Convention Against Torture ("CAT")) are non-self-executing and do not confer judicially enforceable rights beyond those implemented by Congress. *See Garcia v. Sessions*, 856 F.3d 27, 42 (1st Cir. 2017); *Yuen Jin v. Mukasey*, 538 F.3d 143, 159 (2d Cir. 2008). Thus, to the extent Plaintiffs contend that their return violates the Refugee Convention or customary international law, *see* Dkt. 1 at 135, that standalone claim is not cognizable. Instead, only if relevant treaties are given domestic effect do they give rise to enforceable rights.

Second, MPP satisfies any enforceable non-refoulement obligations of the United States. MPP applies only to aliens who are not citizens or national of Mexico: it does not apply to Mexican citizens or nationals fleeing persecution or torture in Mexico. It provides a procedure whereby any

alien who is not a citizen or national of Mexico and is determined to "more likely than not" "face persecution on account of a protected ground or torture in Mexico" will not be subject to the MPP. Dkt. 36-2; 36-3. Aliens can raise such a claim at any time they are in the United States, including "before or after they are processed for MPP or other disposition," after "return[ing] to the [port of entry] for their scheduled hearing," or in transit to or at their immigration proceedings. Dkt. 36-2. Upon referral, asylum officers conduct an "MPP assessment interview in a non-adversarial manner, separate and apart from the general public." Dkt. 36-3. All assessments must "be reviewed by a supervisory asylum officer, who may change or concur with the assessment's conclusion." *Id*.

Further, the process is non-adversarial and no statute or international obligation requires any specific procedure (including that counsel be present) before DHS makes a determination to temporarily return an alien to the non-home country from which he has arrived. *See Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 248 (BIA 2014) (determination of refugee status "is left to each contracting State"). DHS's determinations regarding whether an alien is more likely than not to face persecution or torture in Mexico in the context of MPP are not subject to review by an immigration judge. The statute and international obligations do not require that form of process.

The crux of Plaintiffs' claims, including their arbitrary and capricious claim, is that the non-refoulement procedures in MPP do not mirror the statutorily mandated proceedings in removal and expedited removal proceedings, respectively, including review by an immigration judge, and that MPP's non-refoulement proceedings deviate from procedures codified at 8 U.S.C. §§ 1158, 1225(b)(1), and 1231(b)(3). Dkt. 1 at ¶¶ 129, 134-138, 147. This argument is unavailing because these procedures apply to proceedings regarding the removal of an alien from the United States, not the temporary *return* of an alien to a third country. An order of removal and temporary return

are not synonymous, and the considerations entailed by each course of action are fundamentally different. In the INA, Congress distinguishes between return and removal, specifically outlining the process for "remov[ing]" an alien "without further hearing or review," 8 U.S.C. § 1225(b)(1)(A) (expedited removal), initiating full "removal proceedings" against aliens, 8 U.S.C. § 1229a(1), and temporarily returning an alien to the contiguous territory from where that alien arrived pending removal proceedings, 8 U.S.C. § 1225(b)(2)(C). [6]

Thus, the fact that Congress chose to specify certain procedures to remove an alien, and did not require those procedures in § 1225(b)(2)(C), shows that there is no basis to interpose procedures applicable to removal proceedings in the return context. This is especially true because the omission of review by an immigration judge in § 1225(b)(2)(C) was intentional; "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *DHS v. MacLean*, 574 U.S. 383, 391 (2015).

The Ninth Circuit's conclusion in *Innovation II* that § 1231(b)(3)(A) is "not limited to [removal] proceedings," 951 F.3d at 1089, is wrong and should not be followed here. The text of § 1231 is clear that it concerns only removal proceedings, not return. The Ninth Circuit ascribed importance to the fact that "Congress intended" the precursor to § 1231 to "parallel" Article 33 of

---

[6] In passing, Plaintiffs also claim that "to the extent challengeable in this proceeding, the government's bar on asylum for Ms. Vasquez, A.B., Ms. Martinez, Ms. Colaj, and J.C. based on their failure to apply for asylum in Mexico, see 8 C.F.R. § 208.13(c)(4), violates 8 U.S.C. § 1158 and applicable regulations." Dkt. 1 ¶ 132. Plaintiffs lack standing to bring such a challenge in this Complaint. Fed. R. Civ. P. 12(b)(1). By Plaintiffs' own admission, "[t]his case" concerns the "danger" they allege they face on account of the "Migrant Protection Protocols," Dkt. 1 ¶ 1. That claimed injury is not fairly traceable in any way to an alleged inability to apply for asylum, and their claimed injury in the Complaint stems entirely from being returned to Mexico under MPP. *See* Dkt. 1 at Prayer for Relief; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Blum v. Holder*, 744 F.3d 790, 796 (1st Cir. 2014) (plaintiff must demonstrate an injury in fact is "actual or imminent"). Indeed, because MPP simply authorizes the temporary return of aliens and has no impact on ongoing removal proceedings, Plaintiffs could not plausibly allege that being subject to MPP improperly deprives them of their right to seek asylum in any way.

the Refugee Convention and that "Article 33 is a general anti-refoulement provision, applicable whenever an alien might be returned to a country where his or her life or freedom might be threatened on account of a protected ground." *Id.* That conclusion glosses over the fact that Article 33 is not self-executing, *Garcia*, 856 F.3d at 42, and thus "can only be enforced pursuant to legislation" that carries it "into effect." *Medellin v. Texas*, 552 U.S. 491, 505 (2008). Here, that legislation explicitly limits § 1231 to removal proceedings. Moreover, the Ninth Circuit's reasoning fails on its own terms, because even if § 1231 did apply, 8 U.S.C. § 1231(h) makes clear that "[n]othing in this section shall be construed to create any substantive or *procedural* right or benefit that is legally enforceable by any party." (emphasis added). The only other basis for the Ninth Circuit's holding was to credit the plaintiffs' declarations, *see id.* at 1091-93, but even if those declarations were relevant, properly examined evidence—which they were not, because they were both untested and outside the administrative record—such declarations, like Plaintiffs' declarations in this case, *see* Dkt. 28 at 33, fail to identify a *legal* basis for Plaintiffs' position.

## CONCLUSION

In light of the foregoing, this Court should dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Erin E. Brizius*
Rayford A. Farquhar
Erin E. Brizius
Assistant U.S. Attorneys
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100- Farquhar
(617) 748-3398- Brizius
Rayford.Farquhar@usdoj.gov
Dated: July 13, 2020          Erin.E.Brizius2@usdoj.gov